# United States District Court
## IN THE DISTRICT OF COLUMBIA

William Dennis Goodwin            No: 1:06-cv-01771-RJL

       Plaintiff,

v.                                **RESPONSE TO MOTION TO DISMISS**

United States

       Defendant.

Plaintiff hereby responds:

Defendant moves to dismiss for lack of subject matter jurisdiction. Defendant introduces this direct affront to the Court's dignity (disregarding decisions in "a laundry list"[1] of recent cases) with a misrepresentation. Defendant mischaracterizes the instant case as seeking "damages for alleged "wrongful collection". Counsel's use of quotation marks indicates that counsel is fully aware that her misrepresentative term of art, e.g., "wrongful collection", is nowhere found in the Complaint.

Plaintiff does indeed seek *damages*; for "disregard of *any provision...*" of the Internal Revenue Code, "...or *any regulation promulgated...*" thereunder. Defendant's frivolous attempt to limit the nature of this action to "unauthorized collections" does a disservice to Congress, to the Court, and to counsel's widely disrespected profession. This disservice is compounded by counsel's scandalous presentation of "lack of subject matter jurisdiction" as grounds for dismissal.

## QUESTION PRESENTED

---

[1] Borrowing defendant's term.

Has the defendant, by and with the active assistance of counsel, misrepresented the status of the Court's subject matter jurisdiction?

### DISCUSSION

It is firmly established that the Court's power to hear the case at bar is no longer in question. In recent Memorandum Opinions, *Lindsey v. United States*, DDC 05-1761 (RBW), *Martin v. United States*, DDC 05-2506 (RMC), September 22, 2006, *Anderton v United States*, DDC 06-129 (RBW), the Court discussed this issue at length, and, relying upon *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1245 (Feb. 22, 2006) and *Turner v. United States*, 429 F. Supp. 2d 149, 154 (D.D.C. 2006) (JDB), the Court (Walton, Collyer, and others) made clear that "failure to exhaust administrative remedies *is not a jurisdictional prerequisite to bringing suit*". (emphasis added)

Defendant's persistence in extolling the Court's "error" approaches contempt for the Court's repeated compliance with Supreme Court holdings, and is barely saved by counsel's alternative ground ("but we'll settle for failure to state a claim"), discussed in detail immediately below.

### QUESTION PRESENTED

Is a motion to dismiss for "failure to state a claim" under Fed.R.Civ.P. 12(b)(6) premature under Fed.R.Civ.P 12(h)(2), in the context of the "notice Pleadings" Rule, Fed.R.Civ.P 8(a), and *Conley v. Gibson*, 355 U.S. 41?

### DISCUSSION

In *Arbaugh v. Y & H Corp.*, 126 S.Ct. 1235 (2006), the Supreme Court examined "essential element of a claim" with respect to factual matters. *Arbaugh*, at 1240. Citing to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U. S. 133, the *Arbaugh* Court

reiterated:

> If satisfaction of an essential element of a claim is at issue, however, *the jury is the proper trier of contested facts.* (Emphasis added)

Plaintiff asserts that the Verified Complaint met the "notice pleading" requirements set forth in Fed.R.Civ.P. 8(a), and discussed in *Conley v. Gibson*, 355 U.S. 41[2], and that defendant's Motion to Dismiss, insofar as defendant would have it assert "failure to state a claim", would usurp the jury's authority as the "proper trier" of the contested "essential element" of exhaustion of "*administrative remedies* available " as described in IRC § 7433(d)[3], [4]. Further,

In *Jones v Bock* (Nos. 05-7058 and 05-7142) __ U.S. _____, (Argued: October 30, 2006 -- Decided: January 22, 2007), the Honorable Roberts, C.J., opined that:

> "Failure to exhaust is better viewed as an affirmative defense. Federal Rule of Civil Procedure 8(a) requires simply a 'short and plain statement of the claim' in a complaint..."

Plaintiff asserts that the Verified Complaint met the "notice pleading" requirements set forth in Fed.R.Civ.P. 8(a), as interpreted in *Conley v. Gibson*, 355 U.S. 41[5], and reiterated in *Jones*.

Writing for the Court, the Chief Justice explained that,

---

[2] "(b) Failure of the complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient [355 U.S. 42] ground for dismissal of the suit, since the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Pp. 47-48.

[3] Plaintiff asserts that "the court" contemplated in IRC § 7433(d) comprises, for purposes of factual determinations, both the judge and the jury.

[4] The Congressional language of 7433(d) is directly addressed below.

[5] "(b) Failure of the complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient [355 U.S. 42] ground for dismissal of the suit, since the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Pp. 47-48.

> "The fact that the [statute at issue]...is silent on the issue whether exhaustion must be pleaded or is an affirmative defense, is strong evidence that the usual practice should be followed, and the practice under the Federal Rules is to regard exhaustion as an affirmative defense..."

IRC section 7433, as amended by TBOR III, is silent on the issue whether exhaustion must be pleaded. The *Jones* Court also reiterated:

> "Courts should generally not depart from the Federal Rules' usual practice based on perceived policy concerns. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163,"[6]

and,

> "Given that the [statute at issue] does not itself require plaintiffs to plead exhaustion, such a result 'must be obtained by amending the Federal Rules, and not by judicial interpretation.' Leatherman, supra, at 168. Pp. 10-16."

Defendant, a fiction of law, is bound by such law, and by the Federal Rules of Civil Procedure. Neither the Taxpayer Bill of Right III, nor Rule 8, requires Plaintiff to "demonstrate", "plead" or otherwise "assert" exhaustion; defendant must, in "the usual practice", raise such matter as an <u>affirmative defense</u>, and "place before the jury sufficient proof to generate a jury instruction on the particular defense theory sought"[7], and, notwithstanding recent cases dismissing on grounds of "failure to state a claim", the *Arbaugh* Court, citing to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U. S. 133, reiterated:

> "If satisfaction of an essential element of a claim is at issue, however, the jury is the proper trier of contested facts."

---

[6] Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163 Held: A federal court may not apply a "heightened pleading standard" -- more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)

[7] UNDERSTANDING AFFIRMATIVE DEFENSES, David Beneman, Maine CJA Resource Counsel, Levenson, Vickerson & Beneman

The jury is the proper trier, *Arbaugh*; *Reeves*, of the "'short and plain statement of the claim' in a complaint..." Federal Rule of Civil Procedure 8(a), *Conley*; and of any affirmative defense. *Jones*.

Pretrial dismissal for "failure to state a claim", pre-empted the jury's authority as the "proper trier" of the contested "essential element" of exhaustion of "*administrative remedies* available " as described in 7433(d)'s language; "unless the court determines" - in the common English to which *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) referred, Id., 861 - calls for a determination of fact; clearly within the province of the jury.[8]

7433's language

7433(d)'s language - "unless the court determines" - in the common English to which *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) referred, Id., 861, calls for a determination of fact; clearly within the province of the jury. *Arbaugh*, 1240; *Reeves*. Thus, motion to dismiss on grounds of "failure to state a claim" can be, and, based upon the Congressional language, is, more properly brought after the Court (see footnote 3) has had the opportunity to make a factual determination with respect to exhaustion of available administrative remedies. Further,

Defendant could not seriously assert prejudice by the jury's trial of the factual

---

[8] Defendant could not seriously assert prejudice by the jury's trial of the factual element, since the jury could, upon examination of all relevant facts, find that available remedies were not exhausted; Fed.R.Civ.P 12(h)(2) allows a Motion to Dismiss for "failure to state a claim" any time prior to judgment, to wit:
"A defense of failure to state a claim upon which relief can be granted...may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Fed.R.Civ.P 12(h)(2) (emphasis added)

element, since Fed.R.Civ.P 12(h)(2) allows a Motion to Dismiss for "failure to state a claim" any time prior to judgment, to wit:

> "A defense of failure to state a claim upon which relief can be granted...may be made in any pleading permitted or ordered under Rule 7(a)[9], or by motion for judgment on the pleadings, <u>or at the trial on the merits</u>." Fed.R.Civ.P 12(h)(2) (emphasis added)

Counsel's frivolous motion relies mainly upon the assertion of failure to exhaust administrative remedies in accordance with 26 C.F.R. § 301.7433-1. Plaintiff respectfully reminds the Court that in *Lindsey v. United States*, DDC 05-1761 (RBW), (cited by *Martin v. United States*, DDC 05-2506 (RMC), September 22, 2006, and *Anderton v United States*, DDC 06-129 (RBW)), the Court provided an opportunity to include a "facial challenge" to 26 C.F.R. § 301.7433-1, and Plaintiff so includes herein a "facial challenge" to 26 C.F.R. § 301.7433-1, immediately following discussion of counsel's misreading, misunderstanding, mischaracterization, and misrepresentation of the case at bar as a "refund" action.

## QUESTION PRESENTED

Can property (including, but not limited to, currency in any form) taken without a procedurally proper, valid assessment meeting the requirements of law and regulation properly be the subject of a "refund" action?

## DISCUSSION

Plaintiff seeks a determination as to whether officers or employees of

---

[9]"Pleadings permitted" are limited to "complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. <u>No other pleading shall be allowed</u>, except that the court may order a reply to an answer or a third-party answer." (Emphasis added)

defendant's agent disregarded provisions of the Internal Revenue Code or regulations promulgated thereunder "in connection with" collection activity *in the absence* of record evidence of a valid, properly executed Assessment, i.e., making an "exaction...in the guise of a tax." See: *Enochs V. Williams Packing Co.*, 370 U.S. 1 (1962). If, upon evidence, the Court finds[10] that such unauthorized actions were committed, <u>damages</u> — authorized by Congress[11] — may then be determined; damages under IRC section 7433 (for "exaction...in the guise of a tax") are in no sense the "refund" to which counsel alludes. Counsel's retreat to this issue demonstrates defendant's inability to address the issue of valid, existing assessment(s); the actual subject matter of the Complaint..

Counsel's attempt at conversion also ignores "the controlling significance of context" recognized by Ginsburg, J., in WACHOVIA BANK, N. A. V. SCHMIDT , ___ U.S.___, (04-1186, decided January 17, 2006), citing Citizens & Southern Nat. Bank v. Bougas, 434 U.S. 35.  IRC section 7433 has, in all incarnations, authorized civil actions <u>for damages</u> resulting from disregard of <u>any</u> provision and <u>any</u> regulation  "in connection with" any collection of tax, not simply "wrongful collection" as counsel mis-states; and section 7433 contains no limitation to "disregard of 'collection provisions' or 'collection regulations' ", and counsel lacks authority to effect such change in the law. Section 7422, governing refunds, cannot be construed *in pari materia*; the two provisions address diametrically-opposed situations.

---

[10]Rather than "declares" that Plaintiffs have a right to such finding.

[11]Unless TBOR I, II, and III were "pre-repealed" by the Declaratory Judgments Act.

Counsel then places in quotes "'replevin", moving by footnote to assert a "reality" regarding the nature of the action at bar.  Wherever counsel's "reality" might be found, replevin lies to recover goods which are seized under a <u>void</u> process, *Smith v Huntington*, 3 NH 76; *Denton v Flinchum* (Okla) 285 P2d 395. or judgment. *Iron Cliffs Co. v Lahais*, 52 Mich 394, 18 NW 121.  While a process valid on its face is a protection to an officer against personal liability, it affords no justification or defense in replevin unless it is based on a valid and legal judgment or <u>other prerequisite paper or proceedings</u>. *Adams v Hubbard*, 30 Mich 104; *Power v Kindschi*, 58 Wis 539, 17 NW 689   The rule that an execution fair on its face protects the officer  (See Sheriffs, Police, and Constables (1st ed _ 199). is a rule of protection and cannot be used as a means of attack for offensive purposes and to deprive the rightful owner of his property. Therefore, in an action of replevin, either by the officer or by the owner of the goods, the rule is that the officer, in justifying, must show a valid judgment as the foundation of the action or defense, and that an execution is not sufficient evidence of the officer's right to make the levy and to hold the goods.  *Hoover v Jones*, 84 Neb 662, 121 NW 975; *Cockrell v Schmitt*, 20 Okla 207, 94 P 521.   Also, the right of a person whose property has been wrongfully seized on execution to recover the property <u>in an action of replevin</u> is generally recognized.  *Emerson v Hopper*, 94 Ark 384, 127 SW 467; *Hines v Stahl*, 79 Kan 88, 99 P 273; *Bruen v Ogden*, 11 NJL 370.

Counsel's deliberate misreading, misunderstanding, mischaracterization and misrepresentation of the Complaint allows counsel to misapply IRC section 7422 (governing refund actions) to a section 7433 damages claim, in much the same way that counsel seeks to effect a "stealth repeal" of IRC 7433 through "reading into" 26

USC § 7433(d) words that Congress "wrote out"; while TBOR III (Public Law 105-206, §§ 3000, 3102; (1998)) did specify that "A judgment for damages shall not be awarded under subsection (b) *unless the court determines* that the plaintiff has exhausted the administrative remedies *available* to such plaintiff within the Internal Revenue Service," 26 USC § 7433(d) (emphases added), Congress expressly omitted any requirement that administrative remedies must be exhausted "prior to" commencement of a civil action; this assertion appears to rely solely upon language removed by Congress in TBOR II, (Public Law 104-168, 110 Stat. 1465; (1996)), and no such "prior exhaustion" language was re-added in 7433's current incarnation. Reliance may also be based upon Treasury Decision 9050, where IRS "re-implements" TBOR I's "prior administrative exhaustion" requirement, without the statutory framework of TBOR III as authority.

FACIAL CHALLENGE

## QUESTION PRESENTED

Is defendant, with the active assistance of counsel, "reading into" section 7433 language that Congress had included in TBOR I, totally removed from TBOR II, and intentionally omitted from TBOR III?

## DISCUSSION

TBOR I (1988) expressly withheld jurisdiction in the absence of a prior exhaustion of administrative remedies. TBOR II, Public Law 104-168, 110 Stat. 1465 (1996) specifically removed that prior exhaustion requirement, providing for mitigation of damages in the absence of exhaustion. TBOR III (1998, in Public Law 105-206, §§ 3000, 3102) specified only that "A judgment for damages shall not be awarded under

subsection (b) *unless the court determines* that the plaintiff has exhausted the administrative remedies *available* to such plaintiff within the Internal Revenue Service." 26 USC § 7433(d) (emphases added).

It appears that defendant's insistence (in the Motion to Dismiss, citing the regulation) that administrative remedies must be exhausted "prior to" commencement of a civil action relies solely upon language removed by Congress in 1996; no such "prior exhaustion" language was added in 7433's current incarnation.

## QUESTION PRESENTED

Is Treasury Decision 9050, 68 FR 14320, Mar. 25, 2003, in merely amending Treasury Decision 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, a reasonable interpretation of P.L. 105-206, § 3102 under the deferential framework of *Chevron U.S. A. Inc. v. Natural Resources Defense Council*, Inc., 467 U.S. 837?

## DISCUSSION

As shown in Title 26 of the Code of Federal Regulations, IRS failed to prescribe the administrative procedure necessary to give effect to section 7433, as originally added by TBOR I, for over three years after Congress enacted TBOR I. Treasury Decision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30, 1992, and it appears that the regulation was ineffective until February 18, 1992.

In respect of Congress' removal of the jurisdictional prohibition in TBOR II (1996), Plaintiff has been unable to find an amended final regulation, but was able to find the "Notice of proposed rulemaking" discussing TBORII, attached and incorporated by reference. The "Notice of proposed rulemaking" clearly shows that IRS was aware

of Congress' removal of the jurisdictional prohibition.

It must be noted that Treasury Decision 9050, as published, 68, FR 14320, purported to amend Treasury Decision 8392 (the 1992 regulation) indicating that no "final" regulation implementing the 1996 Act (TBOR II) ever became effective.

Treasury Decision 9050 was itself not effective until March 25, 2003, more than four years and nine months after Congress' enactment of P.L. 105-206, § 3102 (TBOR III). In fact, the regulation was not even proposed until March 5, 2002. Federal Register: Volume 67, Number 43, Page 9929-9934.

This period of "unavailability" of administrative remedy, as egregious as it is, merely provides the context in which the March 25, 2003 version of the regulation re-implements TBOR I's "prior administrative exhaustion" requirement, without the statutory framework necessary to such re-implementation.

Plaintiff asserts that Treasury Decision 9050 (the current 26 C.F.R. § 301.7433-1) is 1) an unreasonable interpretation of Public Law 105-206, § 3102; exceeds the authority of Public Law 105-206, § 3102 by reinserting the "may not be maintained" ("prior exhaustion") language of TBOR I; that Treasury Decision 9050 2) impermissibly extends the operation of the exhaustion requirement; that the regulation 3) frustrates Congress' intent in creating, and amending, 7433; and that it 4) effectively converts a "7433 damages" claim into a "7422 refund" claim, effecting an unauthorized "stealth repeal" of TBOR III by regulation.

THE REGULATION IS AN UNREASONABLE INTERPRETATION

The current regulation requires that an injured Citizen wait up to six months for a ruling on an administrative claim before bringing a civil suit, failing, even under the

deferential framework of *Chevron U.S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, the standard of reasonable interpretation of a statute, and is intended to frustrate a 7433 Plaintiff, to wit:

The <u>half-year</u> waiting period is extreme. In almost every other instance, IRS is limited to (and may limit to) 30 days. Examples include Collection Due Process Hearing requests (30 days, imposed by Congress); pre-Notice of Deficiency letters (30 days). Even opportunity to petition for redetermination of a Notice of Deficiency has a window of 90 days. Yet IRS chose to give itself <u>183 days</u> to decide upon an administrative damages claim. Few people, if any at all, could withstand the six month period for reasons known to, and published by, the National Taxpayer Advocate.[12]

THE REGULATION EXCEEDS THE AUTHORITY OF THE STATUTE

In construing 7433's current incarnation, the starting point must be the language employed by Congress. See: *Reiter v Sonotone Corp.*, 442 US 330, 337, 60 L Ed 2d 931, 99 S Ct. 2326 (1979) and the courts must assume that the legislative purpose is expressed by the ordinary meaning of the words used. *Richards v United States*, 369 US 1, 9, 7 L Ed 2d 492, 82 S Ct. 585 (1962). 7433's current language must ordinarily be regarded as conclusive, *Consumer Product Safety Comm'n v GTE Sylvania, Inc.*, 447 US 102, 108, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), and unless Congress has clearly indicated that its intentions are contrary to the words it employed in the statute, this is the ending point of interpretation. *Fuller v. United States*, 615 F. Supp. 1054 (D.C. Cal 1985; quoting Richards v. United States, supra.

---

[12]SEE: excerpts from NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS, below.

TBOR III, found in section 3102 of the IRS Restructuring and Reform Act of 1998, omits the "prior exhaustion" requirement previously found in TBOR I. Section 7433, as re-amended by TBOR III, is <u>silent</u> with respect to bringing or maintaining a 7433 action. The revision states no more than "...no judgment shall be awarded unless the Court <u>determines</u> that administrative remedies <u>available</u> have been exhausted." Treasury Decision 9050 purports to completely thwart the Court's jurisdiction ("no suit may be maintained") in excess of the statutory mandate. To that extent, the "amendment" of the regulation in Treasury Decision 9050 exceeds the reach of the statute. (Emphases added)

As noted above, "determines" relates to a factual issue, within the province of a jury; the factual determination necessarily includes the extent to which any administrative remedy is "available".

AVAILABILITY OF REMEDY

A comprehensive history of IRC § 7433 was published by the American Bar Association, and Plaintiff respectfully directs the Court's attention to what the Bar had to say about the re-amendment:

> "[F]ew pro se plaintiffs have actual notice of the process established by Treasury Regulation section 301.7433-1. Congress should understand many people's distrust of the ability of the IRS to proceed with their claims..."

As discussed below, the Bar's recognition that "few pro se plaintiffs have actual notice of the process" directly addresses "availability" of remedy, as shown by IRS published policy regarding return of amounts unlawfully collected. Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, is to refrain from returning amounts unlawfully collected. P-5-36 states:

"(1)   Returning money wrongfully collected: This Policy Statement has been revoked."

Thus, even if IRS has collected unlawfully, and knows it, whatever Policy might have existed was revoked. The administrative remedy of filing a claim to recover unlawfully collected amounts is clearly unavailable when the Service Policy on such matters has been revoked.

## REGULATION IMPERMISSIBLY CONVERTS DAMAGES ACTION INTO REFUND ACTION

By requiring that Plaintiff(s) (claimants) place a specific value upon injuries claimed, the regulation effectively neuters the statutory provision in instances where, as alleged in Plaintiff(s) complaint, IRS denies a meaningful Collection Due Process Hearing; a "collection" might not yet have occurred, yet Plaintiff's right to challenge the existence of the underlying liability - established in the statutory provision (6330(c)(2)(B)) - is thwarted[13].

## THE REGULATION FRUSTRATES CONGRESS' INTENT

TBOR I, TBOR II, and TBOR III (RRA '98, § 3102) are testaments of Congress' awareness that IRS cannot be trusted to administer the tax code without supervision. Indeed, in the words of former Deputy Assistant Secretary of Treasury Bradford DeLong, now a Professor at University of California, Berkeley,

"The IRS's comparative advantage is using random terror to elicit voluntary compliance with the tax code...".

Congress intended that Citizens harmed by IRS' legendary disregard of

---

[13]Counsel's mischaracterization of the instant case as a "refund" action is specifically addressed below.

governing statutes and regulations have an avenue to be made whole. Once again, the Congressional "key" is <u>availability</u> of the administrative remedy. If the Court makes a factual determination (province of the jury) that an administrative remedy is effectively unavailable, it need not be pursued.

    As stated by the Supreme Court in *Morton v. Ruiz*, 415 U.S. 199 (1974), at 235:

> Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required. Service v. Dulles, 354 U.S. 363, 388 (1957); Vitarelli v. Seaton, 359 U.S. 535, 539-540 (1959).

    As established in the Code of Federal Regulations, IRS refused to even establish procedures for four years after the right to bring an action was granted by Congress, and currently imposes a prohibitive provision omitted by Congress. Administrative remedy, arguably available in form, is effectively unavailable in substance, as evidenced by Treasury Inspector General Tax Administration reports, mandated in RRA '98, section 1102, failing to show a single instance of IRS granting an administrative claim for damages. The TIGTA Reports, spanning at least 5 years, are attached and incorporated by reference.

    The *Morton* Court, *supra*, opined that the agency power to make rules that affect substantial individual rights and obligations carries with it the responsibility not only to remain consistent with the governing legislation, citing *FMC v. Seatrain Lines, Inc.*, 411 U.S. 726 (1973); *Dixon v. United States*, 381 U.S. 68, 74 (1965); *Brannan v. Stark*, 342 U.S. 451 (1952), but also to employ procedures that conform to the law. See *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969) (plurality opinion). Treasury Decision 9050 fails to remain consistent with P.L 105-206 section 3102, *FMC v. Seatrain Lines,*

*Inc.*, *Dixon v. United States*, *Brannan v. Stark*, and the procedures therein fail to conform to the law. *NLRB v. Wyman-Gordon Co.*

Lack of specific attention to the statutory authorization is especially important in light of the Supreme Court's pronouncement in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), quoted in *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 287 n. 5 (1978), and cited in *SEC v. Sloan*, 436 U.S. 103 (1978), specifying that factors to be considered in giving weight to an administrative ruling include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *SEC v. Sloan*, 436 U.S. 103, 117-118.

The regulation itself is the best evidence of "Lack of specific attention to the statutory authorization" (Skidmore) and failure of "thoroughness…in its consideration" (Sloan). In 301.7433-1's subsection (a), "An action for damages...may not be maintained...", notwithstanding Congress' omission of a "prior exhaustion" requirement; further, paragraph (1) thereof changes, "reckless or intentional actions" to "reckless or inter<u>national</u> actions..." (emphasis added).

Treasury Decision 9050 fails to remain consistent with P.L 105-206 section 3102; the procedures therein fail to conform to the law, and the regulation fails "all those factors which give it power to persuade." *SEC v. Sloan*, 436 U.S. 103, 117-118.

Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their

responsibility if they did not fully review such administrative decisions. *National Labor Relations Board v. Brown*, 380 U.S. 278, 291-292. The Court has the power, for any, each, and all of the foregoing reasons, to strike down Treasury Decision 9050, and Plaintiff asserts that the Court should do so.

Finally, "availability" of administrative remedy - or lack thereof - is adequately demonstrated by, and the Court is requested to take judicial notice of, published reports and testimony of the Treasury Inspector General for Tax Administration, showing that, from 2000 through 2005, defendant's agency made no monetary settlements to any claimant.

Respectfully,

*William Dennis Goodwin*
William Dennis Goodwin

On the above inscribed date before the undersigned, a Notary Public for the State of Missouri, personally appeared William Dennis Goodwin, known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same as his free act and deed.

*Tresa L. Adamson* 4-9-07
Notary, State of Missouri



TRESA L. ADAMSON
My Commission Expires
February 7, 2011
Wright County
Commission #07393723